IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Criminal Case No. 09-cr-00410-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HOWARD O. KIEFFER,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ON DUE PROCESS GROUNDS AND DEFENDANT'S MOTION TO WAIVE JURY TRIAL AND GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION TO RECONSIDER**

---

This matter is again before the Court on Defendant Howard Kieffer's Motion to Dismiss (Doc. # 30). The matter is also before the Court on Mr. Kieffer's Motion to Waive Jury Trial and for Trial to the Court (Doc. # 50), and the Government's Motion to Reconsider Prior Ruling Regarding Exhibits 17 and 18 (Doc. # 47). For the following reasons, Defendant's Motions are DENIED and the Government's Motion is GRANTED IN PART and DENIED IN PART.

## I. MOTION TO DISMISS ON DUE PROCESS GROUNDS

**A.    BACKGROUND**[1]

On September 19, 2009, Mr. Kieffer was indicted in the United States District Court for the District of Colorado for alleged violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1001 (false statements), and 18 U.S.C. § 401 (contempt).[2] In pertinent part, the indictment for wire fraud stems from Mr. Kieffer's acts on the Internet, including holding himself out as an attorney and falsely representing that he had obtained a law degree. In pertinent part, the indictment for false statements stems from Mr. Kieffer's knowingly false representations to the U.S. District Court for the District of Colorado that he was licensed to practice law in the District of Columbia. Finally, in pertinent part, the indictment for contempt stems from Mr. Kieffer's knowing representation, without a law license, of a client in a case tried before the court.

Previously, on August 20, 2008, Mr. Kieffer was indicted in the U.S. District Court for the District of North Dakota for violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1001 (false statements). On December 11, 2008, a Superseding Indictment was issued for the said violations. In pertinent part, Mr. Kieffer's North

---

[1] For a more comprehensive review of the facts, the Court refers to its January 15, 2010 Order denying Defendant's Motion to Dismiss, which the Court incorporates herein by reference. (Doc. # 40.) For purposes of this Court's consideration of additional arguments in connection with Defendant's Motion, the Court will only provide a limited overview of the pertinent facts.

[2] On February 10, 2010, the Government issued a Superseding Indictment. (Doc. # 45.) The Superseding Indictment alleges violations of 18 U.S.C. §§ 1343 and 2(b) (wire fraud), 18 U.S.C. § 1001 (false statements), and 18 U.S.C. §§ 401(1) and (3) (contempt).

2

Dakota indictment for mail fraud stems from his alleged use of the mails to submit a fraudulent Petition for Admission to the Bar of the U.S. District Court for the District of North Dakota and an Oath of Admission. In pertinent part, Mr. Kieffer's North Dakota indictment for false statements also stems from Mr. Kieffer's fraudulent Petition and Oath of Admission. After a full trial, Mr. Kieffer was convicted of these charges. At sentencing, the North Dakota court considered Mr. Kieffer's conduct in the District of Colorado as relevant conduct. (Transcript of Sentencing, Doc. # 30, Ex. 7 at 38.)

On January 4, 2010, Mr. Kieffer filed the instant Motion to Dismiss. (Doc. # 30.) Although the bulk of Mr. Kieffer's Motion to Dismiss is devoted to discussion of the Double Jeopardy clause, two paragraphs assert that this prosecution is also a violation of Mr. Kieffer's due process rights. (*Id*. at 9.)

On January 15, 2010, the Court denied Mr. Kieffer's Motion to Dismiss. (Doc. # 40.) The Order addressed Mr. Kieffer's Double Jeopardy argument. In connection with Mr. Kieffer's multiple prosecutions argument, the Court stated, in pertinent part:

> . . . Mr. Kieffer's acts of mail fraud in the District of North Dakota are factually and legally distinct from his acts of wire fraud in the District of Colorado. Similarly, Mr. Kieffer's acts of false statements in the District of Colorado are factually distinct from his acts of false statements in the District of North Dakota and, per legislative intent, these count as separate offenses. Double jeopardy does not arise merely because Mr. Kieffer's mail fraud in North Dakota and alleged wire fraud in this District are part of one grand scheme to defraud. "[I]t is not the plan or scheme that is punished, but rather each individual use of the mails in furtherance of that scheme." *United States v. Gardner*, 65 F.3d 82, 85 (8th Cir. 1995). Further, each use of the wires is a separate offense, "notwithstanding the fact that the defendant may have engaged in one fraudulent scheme." *United States v. Calvert*, 523 F.2d 895, 914 (8th Cir. 1975) (cited by the Tenth Circuit in *Puckett*, 692 F.2d at 669, n.6).

3

The same holds true for acts of false statements and contempt. *See United States v. Bettenhausen*, 499 F.2d 1223, 1234 (10th Cir. 1974) (concerning false statements); *United States v. Smith*, 532 F.2d 158, 160 (10th Cir. 1976) (concerning contempt). Finally, Mr. Kieffer was not charged with contempt in North Dakota; even if he were, the instant charge is factually distinct from his acts in North Dakota.

Because each of these counts is factually and legally distinct from the counts for which Mr. Kieffer was tried and convicted in North Dakota, the instant prosecution of Mr. Kieffer does not amount to double jeopardy.

(Doc. # 40 at 4-5.)

In connection with Mr. Kieffer's multiple punishments argument, the Court stated, in pertinent part:

The Supreme Court has held that no double jeopardy occurs when a court convicts and sentences a defendant for a crime merely because that crime's underlying conduct had been considered in determining the Defendant's sentence for a previous conviction. *Witte v. United States*, 515 U.S. 389, 406 (1995), *followed by United States v. Greene*, 239 Fed. Appx. 431 (10th Cir. 2007).

(*Id.* at 5).

The Court further stated:

As the Supreme Court made clear in *Witte*, the Sentencing Guidelines and long-standing court precedent allow the consideration of relevant conduct (*i.e.*, activity arising from the same course of criminal conduct), even such conduct that is outside the elements of the crime. *Witte*, 515 U.S. at 403. Such relevant conduct bears on the character of the offense and the offender, which may translate into aggravated punishment. *Id.* Nevertheless, per Supreme Court precedent, Mr. Keiffer was punished only for the fact that the offenses underlying the North Dakota indictment were carried out in a manner that warrants increased punishment, not for the offenses underlying the Colorado indictment.

(*Id.* at 6).

4

On February 17, 2010, during a Final Trial Preparation Conference, Mr. Kieffer renewed his Motion to Dismiss and asked the Court to consider his Due Process argument, which was not explicitly addressed in the Court's January 15, 2010 Order (Doc. # 40), or by the Government's Response in opposition to the Motion. (Doc. # 32). (February 17, 2010 Courtroom Minutes, Doc. # 48.) The Court directed the Government to respond to Mr. Kieffer's Due Process argument by February 22, 2010. (*Id.*) The Government duly complied. (Doc. # 51.)

**B.     DISCUSSION**

The Due Process Clause of the Fifth Amendment states that no person "shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V.

In support of his due process argument, Mr. Kieffer cites to three cases, which are inapposite to the instant action, *United States v. American Honda Motor Co.*, 271 F. Supp. 979, 987 (N.D. Cal. 1967); *United States v. American Honda Motor Co.*, 273 F. Supp. 810 (N.D. Ill. 1967); and *United States v. United States Gypsum Co.*, 404 F. Supp. 619 (D.C. Cir. 1975). In reliance upon these cases, Mr. Kieffer asserts that "successive grand jury inquiries and indictments for alleged separate conspiracies arising out of the same transaction may, and in this situation do, constitute harassment in violation of the Due Process provision of the Fifth Amendment[.]" (Doc. # 30 at 9) (quoting *United States v. American Honda Motor Co.*, 271 F. Supp. 979, 987 (N.D. Cal. 1967).)

5

However, Mr. Kieffer's reliance on these cases is misplaced. By their very nature, conspiracies are distinct from a common scheme to defraud, which is at issue in the instant case. As duly noted in *United States v. Inryco, Inc.*, No. Y80-054, 1981 WL 2126, at *2 (D. Md. July 28, 1981):

> The essence of a Sherman Act conspiracy is the agreement. A single agreement is a single conspiracy, even if the agreement has diverse objects. If there is a single conspiracy, it cannot be fragmented artificially. Neither geographical scope, different overt acts, nor different groups of defendants justify charging separate conspiracies. Likewise a single conspiracy may not be broken down into several based on different time periods.

(internal citations omitted). At issue in multiple prosecutions for a conspiracy is "whether the alleged activities grow out of the same agreement." *Id.* at *6.

In the instant case, the Government alleges the existence of a common scheme – not a conspiracy – stemming from Mr. Kieffer's acts of mail fraud, wire fraud, false statements, and contempt in one or more jurisdictions. As the Court previously determined, each of these acts is a separate actionable offense (Doc. # 40 at 4) and, when separate actionable offenses exist, multiple prosecutions by themselves do not constitute harassment. Moreover, although a single trial may be a "desirable prosecutorial aim," "[p]rosecutors have traditionally enjoyed discretion in deciding which of multiple charges against a defendant are to be prosecuted or whether they are all to be prosecuted at the same time." *United States v. Cardall*, 885 F.2d 656, 666 (10th Cir. 1989). Further, while "multiple prosecutions brought by the government for the purpose of harassment, or in bad faith, may violate due process," Mr. Kieffer has not presented

6

any evidence of any impermissible motivation behind the government's prosecution. *United States v. Easley*, 942 F.2d 405, 412 (6th Cir. 1991).

Accordingly, for the foregoing reasons, Mr. Kieffer's Motion to Dismiss (Doc. # 30) remains denied.

## II. MOTION TO WAIVE JURY TRIAL AND FOR TRIAL TO THE COURT

On February 22, 2010, Mr. Kieffer filed the instant Motion to Waive Jury Trial and for Trial to the Court on grounds that "[t]here are few, if any, factual issues in this case" and also because of "judicial efficiencies" and "Mr. Kieffer's stated desire". (Doc. # 50 at 2). The Government opposes the instant Motion. (*Id.* at 1).

As stated in the Sixth Amendment of the United States Constitution, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" The constitutional right to a jury trial is safeguarded in Fed. R. Crim. P. 23(a), a rule that Mr. Kieffer duly acknowledges, and which states:

> If the defendant is entitled to a jury trial, the trial must be by jury unless:
> (1)  the defendant waives a jury trial in writing;
> (2)  the government consents; **and**
> (3)  the court approves.

(emphasis added). The Supreme Court has discussed and upheld the constitutionality of this provision on more than one occasion. *See e.g.*, *Adams v. United States ex rel. McCann*, 317 U.S. 269, 277-78 (1942)*; Patton v. United States*, 281 U.S. 276, 312-13 (1930). In *Singer v. United States*, 380 U.S. 24 (1965), a case Mr. Kieffer also acknowledges, the Supreme Court stated:

7

> We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury – the very thing that the Constitution guarantees him. The Constitution recognizes an adversary system as the proper method of determining guilt, and the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result.

(*Id.* at 36); *see also United States v. Barkley*, 369 F. Supp. 2d 1309, 1320 (N.D. Okla. 2005) ("There is [ ] simply no constitutional right to waive a jury trial. Waiver is a privilege granted by Fed.R.Crim.P. 23, and is expressly conditioned on the consent of the government and approval of the Court."). In the instant case, as previously noted, the Government refuses consent to Mr. Kieffer's waiver of a right to jury trial. The Government has not articulated a reason for its refusal, and Fed.R.Crim.P. 23(a) does not require it to do so. *Singer*, 380 U.S. at 37. The result, then, is that Mr. Kieffer will be subject to an impartial trial by jury and the protection of his Sixth Amendment rights. Mr. Kieffer's reasons for a trial to the court are not "so compelling" that a "trial by jury would result in the denial [ ] of an impartial trial." *Id.* at *37-*38. The mere desire to forgo trial to save time or on mere speculation of juror partiality is an insufficient basis for a waiver of trial by jury. *Id.* Accordingly, Mr. Kieffer's Motion (Doc. #50) is denied.

### III. GOVERNMENT'S MOTION TO RECONSIDER PRIOR RULING REGARDING EXHIBITS 17 AND 18

On February 16, 2010, the Government filed a Motion to Reconsider Prior [January 25, 2010] Ruling Regarding Exhibits 17 and 18. (Doc. #47).

Exhibits 17 and 18 are, respectively, recordings and a transcript of a secretly-recorded June 2007 telephone conversation between Defendant and an FBI special agent. At a January 25, 2010 hearing, the Court determined that the transcript contains only a few admissions by Mr. Kieffer that are relevant to the specific allegations in the Superseding Indictment. The Court concluded that certain portions of the transcript were not relevant to the charges in this case and, as such, the probative value of those portions was outweighed by danger of unfair prejudice. However, the Court stated that, provided that the FBI special agent would testify at trial to provide background and lay foundation, it would allow the admission of portions of pages 2, 8, 12-14, and 19 of the transcript. The Court concluded these portions were relevant to the charges in this case and the probative value outweighed any unfair prejudice. (January 25, 2010, Courtroom Minutes, Doc. # 44 at 2).[3] In its Motion to Reconsider, the Government seeks the additional admission of pages 4-7, 10-11, 14-18, and 20 on grounds that these pages also contain relevant information.

At a February 17, 2010 Final Trial Preparation Conference, the Court ruled that it would allow only the additional admission of pages 4-5 and the corresponding audio recordings, in order to establish context for the recorded conversation. The Court invited Mr. Kieffer to submit any further objections to the additional admission of these pages and recordings. Mr. Kieffer has filed no further objections. Therefore, the Court will uphold its prior rulings which prohibit the admission of pages 6-7, 10-11, 14-18, and

---

[3] Exhibits 17 and 18 were previously identified as Government's Proposed Exhibit 6.

20 from Exhibit 18 and the corresponding portions of Exhibit 17, but allows the admission of the remainder of Exhibits 17 and 18. Accordingly, the Government's Motion to Reconsider (Doc. # 47) is granted in part and denied in part.

Based on the foregoing, IT IS ORDERED THAT Mr. Kieffer's Motion to Dismiss (Doc. # 30) remains DENIED, Mr. Kieffer's Motion to Waive Jury Trial and for Trial to the Court (Doc. # 50) is DENIED, and the Government's Motion to Reconsider Prior Ruling Regarding Exhibits 17 and 18 (Doc. # 47) is GRANTED IN PART and DENIED IN PART.

DATED: March  10 , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge